# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAUSE OF ACTION INSTITUTE,

    Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE,

    Defendant.

Civil Action No. 17-1423 (JEB)

## MEMORANDUM OPINION

Plaintiff Cause of Action Institute caught wind of a congressional committee's instruction to various government agencies to withhold certain records in response to Freedom of Information Act requests. Hoping to uncover the agencies' reactions to this directive, the Institute filed a FOIA request with Defendant United States Department of Justice. Frustrated with DOJ's delayed response, the Institute then initiated this suit. DOJ eventually identified and turned over responsive records, but partially redacted some and refused to provide others, citing the protections afforded by FOIA Exemptions 5 and 6. Both parties now move for summary judgment.

In so doing, the Institute concedes the adequacy of the Government's search and presents no challenge to its redactions of personal information. But it does take issue with information withheld pursuant to two privileges under Exemption 5's umbrella: the attorney-client privilege and the deliberative-process privilege. After conducting an *in camera* review of the documents at issue, the Court finds merit in both parties' Motions. It agrees that the claimed privileges do indeed cover a subset of the withheld documents, but concludes that they do not extend quite as

far as DOJ claims.  Some of the redacted content reveals no confidential communication within the scope of an attorney-client relationship and no deliberation of agency personnel.  The Court, therefore, grants in part and denies in part each side's Motion for Summary Judgment.

## I.  Background

Little need be said to tee up the narrow issues at play.  In the spring of 2017, Representative Jeb Hensarling, Chairman of the United States House of Representatives Committee on Financial Services, sent a letter to the twelve agencies within his committee's jurisdiction.  This letter instructed the agencies that communications with the committee should be treated as "congressional records" rather than "agency records."  See ECF No. 1 (Compl.), Exh. 1 (FOIA Request) at 8-9 (Letter from Chairman Hall to Secretary Mnuchin (Apr. 3, 2017)).  The import of this instruction for FOIA requests is significant: while "agency records" must generally be turned over in response to a FOIA request, "congressional records" are often protected from disclosure.  Id.  For this reason, the letter requested that the agencies "decline to produce any such congressional records in response to a request under the Freedom of Information Act."  Id. at 9.

The Chairman's letter found its way into the hands of the press, prompting the Institute to file a FOIA request with DOJ to obtain additional information.  See ECF No. 16 (Pl. MSJ & Opp.) at 3.  Plaintiff sought "[a]ll communications" between two DOJ divisions – the Office of Information Policy (OIP) and the Office of Legislative Affairs (OLA) – and any of the twelve agencies under the Financial Services Committee's purview concerning the Chairman's "directive."  FOIA Request at 2-3 (Letter from Ryan P. Mulvey, CoA Inst., to Laurie Day, DOJ OIP (May 18, 2017)).  The request also sought similar communications between DOJ and either the White House or certain members and committees of the House of Representatives.  Id. at 3.

About a month after the Institute filed its FOIA request, DOJ acknowledged receipt. Justice then notified Plaintiff that its search would require more than the "ten additional days provided by the statute." Compl., Exh. 2 (Letter from James M. Smith, DOJ OIP, to Mulvey (June 22, 2017)) at 2. Because the Institute's request required searching another office, DOJ attested that it fell within the category of "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Id. After approximately another month passed, the Institute, having received no further communication, filed this suit.

DOJ subsequently produced two batches of documents. In the first, it turned over five pages to Plaintiff, which comprised emails between the White House Counsel's Office and OIP. Following the parties' convention, the Court will refer to this batch of records as the "White House-DOJ documents." Justice made various redactions to these documents per Exemption 5 and also removed personally identifiable information under Exemption 6. See ECF No. 14 (Def. MSJ), Exh. C (White House-DOJ Documents) at 5.

Defendant later notified the Institute that it had discovered eleven additional pages of responsive records. See Def. MSJ, Exh. D (Letter from Vanessa R. Brinkmann, DOJ OIP, to Mulvey (Jan. 8, 2018)) at 1-2. In a declaration filed with the Court, Justice describes these documents as "email communications, including attachments (one of which is a draft), between [OLC] and OLA and another Executive Branch agency, regarding and responding to a confidential request for DOJ advice from the agency." Def. MSJ, Attach. 1 (Decl. of Vanessa R. Brinkmann, Sr. Counsel, DOJ OIP), ¶¶ 12, 22. Justice did not, however, disclose which executive-branch agency is included in the correspondence. The Court will refer to this batch of records as the "Agency-DOJ documents." Claiming the protection of Exemption 5, DOJ withheld the eleven pages in full. See Letter from Brinkmann to Mulvey at 1-2.

Both parties have now filed Motions for Summary Judgment regarding the propriety of the exemptions invoked by DOJ. To aid in resolving this issue, the Court, on August 3, 2018, ordered the Government to produce the records at issue for *in camera* inspection. See 8/3/2018 Minute Order. Having now completed this evaluation, the Court is primed to resolve the parties' present dispute.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment, and the agency bears the ultimate burden of proof. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007); see also DOJ v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir.

1981).

## III. Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute thus provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine statutorily created exemptions. Id. § 552(b). So as not to undermine the purposes underlying FOIA, these exemptions "must be narrowly construed." Rose, 425 U.S. at 361.

Consistent with this mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 754-55 (1989). And "[u]nlike the review of other agency action[,] . . . the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). In making this determination, the court "[a]t all times . . . must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The Institute, to its credit, has done an admirable job of narrowing the issues in this case. It does not challenge the adequacy of DOJ's search, nor does it take issue with the redaction of personal information under Exemption 6. See ECF No. 15 (Pl. MSJ & Opp.) at 5. It also concedes that the produced documents are "inter-agency or intra-agency memorandums," thus satisfying Exemption 5's threshold requirement. Id. at 7 n.2; see also Am. Immigration Council v. U.S. Dep't of Homeland Sec., 950 F. Supp. 2d 221, 238 (D.D.C. 2013). All that is left is the Institute's contention that Exemption 5's privileges do not cover two categories of withholdings: two specific items redacted from the White House-DOJ documents and the eleven pages of the Agency-DOJ documents withheld in full.

A. Exemption 5

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Withholdings are restricted to "those documents, and only those documents, normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 798-99 (1984). In contrast to disclosures in that context, the needs of a particular plaintiff are irrelevant to a court's determination of whether a particular communication is exempt from disclosure under (b)(5). See Martin v. Office of Special Counsel, Merit Sys. Prot. Bd., 819 F.2d 1181, 1184 (D.C. Cir. 1987) (citing Sears, Roebuck & Co., 421 U.S. at 149 & n.16).

Exemption 5 encompasses three distinct components – namely, the deliberative-process privilege (sometimes referred to as "executive privilege"), the attorney-work-product privilege, and the attorney-client privilege. See Am. Immigration Council v. U.S. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012). DOJ here relies on both the attorney-client privilege

and the deliberative-process privilege.  The Court addresses each separately, understanding that a document is protected if <u>either</u> applies.

1.  *Attorney-Client Privilege*

The attorney-client privilege protects from disclosure confidential communications from clients to their attorneys, as well as communications from attorneys to their clients containing confidential information supplied by the client.  <u>See</u> <u>Tax Analysts v. IRS</u>, 117 F.3d 607, 618 (D.C. Cir. 1997).  As with the other prongs of Exemption 5, the burden rests with the Government to prove, through "detailed and specific information," that the withheld information falls within the domain of the privilege.  <u>See</u> <u>Campbell v. U.S. Dep't of Justice</u>, 164 F.3d 20, 30 (D.C. Cir. 1998).  In order to prevail on a motion for summary judgment in this area, the Government must substantiate five essential elements in its supporting documentation:

> (1) [T]he holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client. Additionally, [(5)] a "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since."

<u>Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.</u>, 841 F. Supp. 2d 142, 153-54 (D.D.C. 2012) (citing <u>In re Sealed Case</u>, 737 F.2d 94, 98-99 (D.C. Cir. 1984); <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 863 (D.C. Cir. 1980)); <u>accord</u> <u>Fed. Trade Comm'n v. GlaxoSmithKline</u>, 294 F.3d 141, 146 (D.C. Cir. 2002).

"In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer."  <u>Tax Analysts</u>, 117 F.3d at 618.  Where an agency lawyer serves in a mixed capacity that involves responsibilities both within and "outside the lawyer's sphere," however,

the agency employee's communications will be protected only to the extent that they involve her professional, legal capacity. In re Sealed Case, 737 F.2d at 99. In this context, to invoke the privilege, DOJ must establish that securing legal advice was a "primary purpose" of the agency's communication. See In re Kellogg Brown & Root, Inc., 756 F.3d 754, 759-60 (D.C. Cir. 2014). The mere fact that the correspondence involved a member of the bar is insufficient. See Mead Data Cent. v. U.S. Dep't of the Air Force, 566 F.2d 242, 253 (D.C. Cir. 1977) ("The privilege does not allow the withholding of documents simply because they are the product of an attorney-client relationship."). For instance, the privilege does not extend to a "government attorney's 'advice on political, strategic, or policy issues, valuable as it may [be].'" Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 926 F. Supp. 2d 121, 144-45 (D.D.C. 2014) (quoting In re Lindsey, 148 F.3d 1100, 1106 (D.C. Cir. 1998)).

a. White House-DOJ Documents

The disputed White House-DOJ documents center on an email sent from a member of the White House Counsel's Office to the director of OIP. See White House-DOJ Documents at 5. The email begins: "FYI – the administration has received several letters like the attached." DOJ then redacted the immediately following sentence, as well as the attached letter, claiming that the material fell within the scope of Exemption 5. Id. These are the two documents at issue here. DOJ also redacted what appears to be personal information, citing Exemption 6, but, as explained earlier, Plaintiff has no beef with those redactions. As to Exemption 5, DOJ contends that the redacted information "falls squarely under the protection of the attorney-client privilege." ECF No. 17 (Def. Opp. & Reply) at 2. Having reviewed the redactions *in camera*, the Court disagrees.

Defendant's argument stumbles out of the gate. Nowhere does the White House directly ask for legal advice in the email, nor is there any other statement that can even be fairly construed as a solicitation of legal counsel. Rather, the body of the email begins with the acronym "FYI," which the Court, like the parties, takes to mean "for your information." This statement gives the email the appearance of a simple alert to another government employee and not a communication whose "primary purpose" is securing legal advice. See In re Kellogg Brown & Root, Inc., 756 F.3d at 759-60.

DOJ nonetheless asks the Court to infer from "the context of th[e] email" that the White House Counsel's Office's true purpose, even if not apparent from the email's text, was to seek legal advice from OIP. See Def. Opp. & Reply at 5. To substantiate this position, Justice relies largely on a declaration submitted by an OIP senior counsel. See Def. MSJ at 17; Def. Opp. & Reply at 2-4. In this declaration, the official asserts that OIP "routinely provides legal advice" to further its mission "to oversee and encourage agency compliance with the FOIA." Brinkmann Decl., ¶ 15. DOJ does not claim, however, that providing legal advice is the office's sole duty or its primary reason to interact with other agencies. Beyond this general description, the declaration specifically characterizes the email exchange at issue here as a "consultative exchange . . . regarding FOIA matters on which" the OIP director "has been asked to provide her advice." Id.

Although no doubt helpful to DOJ's position, this evidence does not carry it across the finish line. This is so for two reasons.

First, the fact that OIP is in the business of sometimes – or even "routinely" – providing legal advice is insufficient when, as here, the provision of legal services is not the office's sole duty. It is Justice's burden to show that this particular communication involved a request for

legal advice. For when a government lawyer's duty encompasses providing both legal and non-legal advice, the Government must show that the communication at issue involves the provision of legal services rather than, for example, "political, strategic, or policy issues." Judicial Watch, 926 F. Supp. 2d at 144-45; see also In re Sealed Case, 737 F.2d at 99. DOJ's particularized arguments, moreover, are thin. In the Court's view, the "context of the email" to which the Government refers only reveals coordination between the White House and OIP on a response to the congressional instruction. It does not establish that the purpose of this communication was legal in nature. In addition, although DOJ asserts in a declaration that the OIP director had "been asked to provide her advice" in this exchange, see Brinkmann Decl., ¶ 15, such a declaration characterizing withheld documents carries little weight when the Court has had an opportunity to reach its own determination after an *in camera* review. See Military Audit Project, 656 F.2d at 738 (noting that affidavit "controverted by . . . evidence in the record" does not carry weight); Reporters Comm., 489 U.S. at 755 (requiring courts to evaluate the propriety of withholdings without deference to the agency). Parsing this declaration carefully, the Court also notes that the official only asserts that the White House requested "advice," which may or may not be legal in nature. As noted, advice on "political, strategic, or policy issues" does not warrant protection. Judicial Watch, 926 F. Supp. 2d at 144-45.

Second, even if the Court were to assume that obtaining legal advice was one of the White House's objectives in reaching out to OIP, DOJ might nevertheless still fail to carry its burden. That a conversation has some legal nexus is insufficient: the party seeking the protection of the attorney-client privilege must show that securing legal advice was a "primary objective." In re Kellogg Brown & Root, Inc., 756 F.3d at 759-60. For the reasons already explained, the email's language cuts against any inference that the communication primarily concerned a

request for legal counsel, rather than mere coordination on strategy or policy amongst government agencies.   The Government has thus not cleared its first hurdle – *i.e.*, demonstrating that the solicitation of legal advice constituted the communication's primary purpose.

This is not DOJ's only deficiency.   A communication between a client and an attorney is only protected if "based on <u>confidential information</u> provided by the client."   <u>Mead Data</u>, 566 F.2d at 254 (emphasis added); <u>see also</u> <u>Coastal States</u>, 617 F.2d at 863 ("The purpose of the privilege is limited to protection of <u>confidential facts</u>.") (emphasis added).   For the privilege to apply, that information must also "concern[] the Agency."   <u>Tax Analysts</u>, 117 F.3d at 619 (emphasis omitted) (quoting <u>Schlefer v. United States</u>, 702 F.2d 233, 245 (D.C. Cir. 1983)). DOJ asserts that the redacted information includes "confidential agency information."   Def. Opp. & Reply at 3.   But the Court has seen these communications, and it does not agree.

The Court is confident that the single sentence redacted from the email contains no confidential information beyond what DOJ has affirmatively disclosed in responding to the Institute's FOIA request and in its filings in this matter.   <u>See</u> <u>Coastal States</u>, 617 F.2d at 863 (requiring that confidentiality be maintained to warrant protection under the attorney-client privilege).   No more need be said.

Similarly, the substance of the attached letter does not reveal any "confidential information <u>concerning the [a]gency</u>."   <u>Tax Analysts</u>, 117 F.3d at 619.   Perhaps DOJ could argue that the fact that this particular agency received the letter is "confidential information."   This is a tough argument to make, however, since the prior disclosed sentence reveals that "the administration has received several letters like the attached."   By revealing to the Institute the earlier sentence in response to its FOIA request regarding certain congressional correspondence, the Government has divulged that the agency has received such letters.   <u>See</u> <u>Coastal States</u>, 617

F.2d at 863.  DOJ could conceivably argue – although it does not – that the fact that this agency received this <u>particular</u> letter is "confidential information" necessitating protection.  This argument would be sliced awfully thin.  After reviewing the attachment *in camera*, the Court sees nothing about this letter that sufficiently differentiates it from the others such that the Court could conclude that the fact of the communication is predicated on "confidential information concerning the [a]gency."  <u>Tax Analysts</u>, 117 F.3d at 619.  The attorney-client privilege, therefore, does not apply to the White House-DOJ documents.

### b.  Agency-DOJ Documents

Where the White House-DOJ documents obtain no protection, the Agency-DOJ documents fare better.  These consist of a chain of emails between an undisclosed executive-branch agency and three offices inside DOJ – namely, OIP, OLA, and OLC.  Included with the emails are two attachments, one of which is a draft agency document.  <u>See</u> Brinkmann Decl., ¶ 12.

Unlike the White House-DOJ documents, some of these emails contain a clear request for advice from a government office – OLC – whose "principal function" concerns the provision of legal advice.  <u>Id.</u>, ¶ 15.  There can be no doubt, moreover, that at least some of the communications divulge confidential agency information in the request for legal advice.  Based on its *in camera* review, the Court determines that many of these emails – and any legal advice rendered in response – fall comfortably within the scope of the attorney-client privilege.  Two categories of communications merit further discussion.

First, the Court concludes that the privilege extends to the draft attachment.  A draft document is protected under the attorney-client privilege if "the draft itself contains protected confidential communications from the client or the attorney."  <u>Loftin v. Bande</u>, 258 F.R.D. 31,

12

35 (D.D.C. 2009). Where a draft document "relates to facts of which the client was informing the attorney for the purpose of securing an opinion of law," the document need not be disclosed. Alexander v. FBI, 186 F.R.D. 154, 162 (D.D.C. 1999); see also Alexander v. FBI, 198 F.R.D. 306, 312 (D.D.C. 2000) ("Drafts of documents that are prepared with the assistance of counsel for release to a third party are protected under attorney-client privilege."). This remains true even if the final draft is ultimately disclosed to a third party. See Holland v. Island Creek Corp., 885 F. Supp. 4, 8 (D.D.C. 1995) ("[C]ourts have held that where, as here, several different versions of preliminary drafts of a document exist, and only some are disclosed, '[t]he privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties.'") (quoting Schenet v. Anderson, 678 F. Supp. 1280, 1284 (E.D. Mich. 1988)). The Court's *in camera* review, backed up by DOJ's assertion that this record is "a draft," Brinkmann Decl., ¶ 12, establish that the attachment is not the final version of the document. It is also clear to the Court that the draft here contains confidential agency information. The sending of the document to legal counsel for the purpose of review, accordingly, means that the draft falls within the scope of the privilege and is entitled to protection.

Second, included in the withheld chain are, admittedly, emails that do not communicate any "confidential information concerning the [a]gency." Tax Analysts, 117 F.3d at 619. DOJ argues that such information is nevertheless protected because the identity of the agency is itself covered by the privilege. See Def Opp. & Reply at 20. Under the general rule, the attorney-client privilege does not protect from disclosure the "identity of the client . . . and the general purpose of the work performed." United States v. Naegele, 468 F. Supp. 2d 165, 171 (D.D.C. 2007) (quoting Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir. 1999)). But "correspondence" and other documents that grow out of the attorney-client relationship are

protected if they "reveal the motive of the client in seeking representation." Id.; see also Berliner Corcoran & Rowe LLP v. Orian, 662 F. Supp. 2d 130, 134 (D.D.C. 2009) (noting that payment of attorney fees is covered by privilege if "they reveal confidences about the nature of legal services rendered"). Put otherwise, when a "client's identity [is] sufficiently intertwined with the client's confidences," the privilege applies. In re Grand Jury Subpoena, 204 F.3d 516, 520 (4th Cir. 2000) (citing NLRB v. Harvey, 349 F.2d 900, 905 (4th Cir. 1965)). Given the context in this case, the disclosure of the agency in the emails would reveal its "motive . . . in seeking [legal] representation." Naegele, 468 F. Supp. 2d at 171. The privilege therefore protects its identity.

As the Institute points out, this is not the prototypical case in which disclosing a client's identity would reveal client confidences. See ECF No. 19 (Pl. Reply) at 18. Plaintiff knows that the agency's motive in seeking legal advice derives from Chairman Hensarling's directive to treat certain communications as congressional records. The Institute, moreover, has learned the identity of the twelve agencies that received the letter. Id. It remains in the dark only as to which of these twelve actually sought OLC's counsel in these communications. That Plaintiff has some pieces of the puzzle, however, does not justify revealing the complete picture. Divulging the client's identity would still disclose that the agency acted on a particular "motive . . . in seeking representation," Naegele, 468 F. Supp. 2d at 171, and would thus shed light on the "nature of legal services rendered." Orian, 662 F. Supp. 2d at 134. DOJ's declaration further notes that the agency here "specifically requested confidentiality in its privileged communications with OLC and OLA, citing concerns that being singled out and publicized as having solicited DOJ advice on this matter could negatively affect its relationship with Congress." Brinkmann Decl., ¶ 24. Reference to the purposes underlying the privilege – it

seeks to ensure "full and frank communication between attorneys and their clients" – thus affirms its applicability here.  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  Disclosure may very well hinder an agency's willingness to seek counsel.

In the face of the foregoing, the Institute lodges a single objection.  It contends that OLA's presence on the email chain between the agency and OLC vitiates the attorney-client privilege, since the "voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege."  In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir. 1982); Pl. MSJ & Opp. at 11.  As both parties recognize, the test is whether the information was "circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'"  Coastal States, 617 F.2d at 863 (quoting Mead Data, 566 F.2d at 253 n.24); Pl. MSJ & Opp. at 11; Def. Opp. & Reply at 7.  Put another way, the privilege remains intact so long as dissemination does not extend beyond those on a "need to know" basis.  See GlaxoSmithKline, 294 F.3d at 147-48.  Those within this ambit can extend beyond the organization's employees to, for example, public-relations or government-affairs consultants outside of the organization.  Id. at 148.  If disclosure to a public-relations firm may not vitiate the privilege, there can be little doubt that OLA's presence on the email chain here does not breach confidentiality.  OLA is an organization within the executive branch, and the matter at issue concerned an agency's response to congressional correspondence, which is directly in OLA's wheelhouse.  See Def. Opp. & Reply at 7-8.  The disclosure of communications to OLA thus did not waive the privilege.

For these reasons, the Court concludes that the attorney-client privilege generally protects the Agency-DOJ documents. Whether some of the information therein can nevertheless be disclosed is the subject of the later segregability analysis.

2. *Deliberative-Process Privilege*

Because the Court concludes that the attorney-client privilege covers the Agency-DOJ documents, it need not address whether the deliberative-process privilege also applies to them. Since, conversely, the White House-DOJ communications are not so protected, a discussion of that privilege is thus warranted. This is so because, as previously mentioned, the Government may withhold documents or portions thereof as long as either privilege applies.

The deliberative-process privilege shields internal agency "advisory opinions, recommendations and deliberations" in order to "protect[] the decision making processes of government agencies." Sears, Roebuck & Co., 421 U.S. at 150 (citations omitted). To qualify under this privilege, a record must meet two requirements. First, it must be predecisional – *i.e.*, "[a]ntecedent to the adoption of an agency policy." Jordan v. DOJ, 591 F.2d 753, 774 (D.C. Cir. 1978) (*en banc*) (emphasis omitted), overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1053 (D.C. Cir. 1981) (*en banc*). Second, a record must be deliberative – *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975). "A document that does nothing more than explain an existing policy cannot be considered deliberative." Public Citizen, Inc. v. OMB, 598 F.3d 865, 876 (D.C. Cir. 2010). Exemption 5 thus "focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental

decisions and policies are formulated." Sears, Roebuck & Co., 421 U.S. at 150 (citation and internal quotation marks omitted).

A quick refresher on the two documents at issue: In an email from the White House to OIP, the author writes: "FYI – the administration has received several letters like the attached." The following sentence and the attached letter are both redacted.

Beginning with the first prong of the two-part test, the Court has no trouble concluding that the communications at issue are "predecisional." It is clear from the non-redacted portion of the record and the DOJ declaration that the White House sought to coordinate with OIP the agencies' responses to the Financial Services Committee's request to treat communications with the Committee as "congressional records." At the time, no decision in this regard had yet been made. Communications are generally regarded as "predecisional" so long as they were "generated as part of a continuous process of agency decision making, *viz.*, how to respond to on-going inquiries." Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (italics added). Similarly, this Court has noted on more than one occasion that "the deliberative-process privilege covers 'agency deliberations about how to respond to media inquiries regarding prior agency actions, as well as discussions about press coverage of existing agency policies and suggested talking points about how to answer questions regarding the duties assigned to agency employees.'" Am. Immigration Council v. U.S. Dep't of Homeland Sec., 21 F. Supp. 3d 60, 75 (D.D.C. 2014) (quoting Competitive Enter. Inst. v. EPA, 12 F. Supp. 2d 100, 118 (D.D.C. 2014)). If the process of formulating a response to a media inquiry regarding an existing policy is predecisional, then there can be little doubt that formulating a response to a congressional inquiry requesting the adherence to a new policy is also predecisional. See Odland v. FERC, 34 F. Supp. 3d 3, 20 (D.D.C. 2014) (holding that

deliberative-process privilege applied to intra-agency emails considering agency's response to congressional inquiry).

Whether the communications are properly "deliberative," on the other hand, is less clear. DOJ asserts that divulging the redacted information would "reveal the details of the unfolding discussion and thereby what the agency was considering," as well as its "thought processes and deliberations." Def. Opp. & Reply at 11. Having reviewed the withheld portions *in camera*, the Court sees no such harm. These sections contain no "advisory opinions, recommendations, [or] deliberations" regarding the agency process at issue. Sears, Roebuck & Co., 421 U.S. at 150; see also Public Citizen, 598 F.3d at 876 ("Only those portions of a predecisional document that reflect the give and take of the deliberative process may be withheld."). Nothing in the redacted portions of the documents reflect anything that can even be construed as a personal opinion of an agency official. See Coastal States, 617 F.2d at 866 ("The exemption thus covers . . . subjective documents which reflect the personal opinions of the writer."). There is, therefore, no risk that disclosure would cause the agency's decisionmakers to "temper candor" in their remarks "out of a concern for appearances." National Sec. Archive v. CIA, 752 F.3d 460, 462 (D.C. Cir. 2014) (quoting United States v. Nixon, 418 U.S. 683, 705 (1974)). Similarly, without any expression of opinion, the redaction is not "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." Coastal States, 617 F.2d at 866.

In retort, DOJ points out that the deliberative-process privilege "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982). Even if the documents reveal no

"personal opinions" or "give and take of the deliberative process," DOJ says, they nonetheless reveal something about the process by which DOJ organized its deliberations. See Def. Opp. & Reply at 11-12.

It is true that, in some cases, the privilege extends to protect information that would reveal "the deliberative process itself" so as not to "expose an agency's policy deliberations to unwarranted scrutiny." Mapother v. Dep't of Justice, 3 F.3d 1533, 1537-38 (D.C. Cir. 1993) (internal citation omitted); see also Montrose Chemical Corp. of Calif. v. Train, 491 F.2d 63, 70-71 (D.C. Cir. 1974) (holding similarly). Having reviewed the redacted information, the Court is confident that this is not such a case. This is not a situation in which agency employees distilled voluminous records into factual summaries for higher-ups. See Montrose Chemical, 491 F.2d at 70-71 (granting protection in such a situation). Nor do the documents reveal the outcome of the deliberative process. See Wolfe v. Dep't of Health & Human Servs., 839 F.2d 768, 775 (D.C. Cir. 1988) (en banc) (holding that protection of factual or otherwise non-deliberative material is warranted when disclosure would reveal "the recommended outcome of the consultative process"). The redactions offer no insight into the agency's position or anything else that "clearly involves 'the formulation or exercise of . . . policy-oriented judgment' or the 'process by which policy is formulated.'" Mapother, 3 F.3d at 1539 (quoting Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1435 (D.C. Cir. 1992)). As the Court's review makes clear, the communications here reveal no "deliberative process" that could "expose [the] agency's policy deliberations to unwarranted scrutiny." Id. at 1538.

Absent more, the privilege cannot apply. A record is not protected merely by virtue of being a relevant predecisional communication. See Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Homeland Sec., 648 F. Supp. 2d 152, 158-59 (D.D.C. 2009) (requiring

disclosure of redactions in which "no agency policy is being debated or discussed" even though the "redactions are, in the most general sense, part of an intra-agency discussion relating" to agency's response to media inquiry).   The deliberative-process privilege does not shield, for example, the simple "fact that a meeting is scheduled to take place" and "the purpose of that meeting."  Id. at 159.  Extending the privilege to encompass every communication that relates in some way to an agency's predecisional correspondence would fly in the face of the general directive that the Act's exemptions be "narrowly construed."  Judicial Watch, Inc. v. Dep't of Justice, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (citing Tax Analysts, 492 U.S. at 151).

DOJ has a final arrow in its quiver.  Even if the attached letter reflects no deliberative process of the agency itself, the decision to single out that letter for circulation from the several letters received by the administration evinces a decision reflective of the deliberative process.  See Def. MSJ at 10.  The record does not support such a contention.  The unredacted portion of the email notes that "the administration has received several letters like the attached."  White House-DOJ Documents at 5 (emphasis added).  This phrase indicates that this letter is circulated because it is a representative of the whole, not because it holds significant differences that bear on the agency's deliberative process.  The Court's in camera review confirms this hypothesis.  The date the letter was received, rather than its substance, may have spurred the email's author to forward it to OIP.

To the degree that the deliberative nature of this redacted material presents the Court with a close call, resort to the purposes underlying the deliberative-process privilege clears away any misgivings.  The privilege serves three purposes:

> (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before finally they are adopted; and (3) to protect against public confusion that might result from

disclosure of reasons and rationale that were not in fact ultimately
the grounds for an agency's action.

Citizens For Responsibility & Ethics in Washington v. Nat'l Archives & Records Admin., 583 F.

Supp. 2d 146, 156 (D.D.C. 2008) (quoting Defs. of Wildlife v. Dep't of Agric., 311 F. Supp. 2d

44, 57 (D.D.C. 2004)).  For the reasons already stated, the lack of any opinion expressed in the

redacted material mitigates any negative impact on the potential for open, frank discussions.  The

fact that the redactions reveal no policy statement or opinions also eliminates any concern that

disclosing the communications would result in either "premature disclosure of proposed

policies" or "public confusion."  The deliberative-process privilege, therefore, does not shield the

White House-DOJ documents from disclosure.

    B.  Foreseeable Harm

The Institute raises another issue that the Court must address in connection with the

Agency-DOJ documents.  In 2016, Congress passed the FOIA Improvements Act.  See Pub. L.

No. 114-185, 130 Stat. 538 (codified at 5 U.S.C. § 552).  Among other things, this Act added the

requirement that an agency can withhold information only if it "reasonably foresees that

disclosure would harm an interest protected" by the statute.  Id.; see also 5 U.S.C.

§ 552(a)(8)(A)(i)(I).

Plaintiff contends that Congress thereby sought to "raise the standard by which an agency

evaluates its withholdings."  Pl. Reply at 15.  No longer, it says, can an agency rely on the

technical application of an exemption; it must now identify a precise reason why the disclosure

of a specific record would harm the interests protected by, in this case, the attorney-client

privilege.  See Pl. MSJ & Opp. at 18-19.  DOJ, on the other hand, contends that the Act made no

change to existing agency policy and does not alter the scope of the information covered by the

exemption.  See Def. Opp. & Reply at 16-17.

The Court need not resolve this dispute as the Government prevails under either approach. As already explained, the attorney-client privilege seeks to ensure "full and frank communication between attorneys and their clients." Upjohn, 449 U.S. at 389. DOJ has asserted in a declaration the agency's reticence to have its communications disclosed and explained the manner in which disclosure would stifle "full and frank" communication between DOJ and its client agencies. See Def. Opp. & Reply at 18; Brinkmann Decl., ¶¶ 15, 23, 24. No more is required on this front.

C. Segregability

Finally, FOIA requires that any such "reasonably segregable portion of a record shall be provided to any person requesting such record after the deletion of the portions which are exempt." 5 U.S.C. § 552(b). While the Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (quoting Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1117 (D.C. Cir. 2007)), this presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability. See Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 261-62 (D.C. Cir. 1977). To do so, the agency must provide "a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining government affidavits explained nonsegregability of documents with "reasonable specificity"). "Reasonable specificity" can be established through a "combination of the Vaughn index and [agency] affidavits." Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).

In order to be considered reasonably segregable, the information, if disclosed, must retain some meaning. See Mead Data, 566 F.2d at 261 n.55 ("[A] court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."); Nat'l Sec. Archive Fund, Inc. v. CIA, 402 F. Supp. 2d 211, 220–21 (D.D.C.2005) (finding no reasonably segregable information existed because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words") (internal quotation and citation omitted).

After conducting an *in camera* review, the Court determines that the Government has met its burden. For the reasons discussed above, little in the Agency-DOJ documents falls outside of the scope of the attorney-client privilege. After redacting the protected information, all that would remain are fragmented words and sentences that cannot possibly hold "informational value" for the Institute beyond what has already been publicly disclosed. See Neufeld v. IRS, 646 F.2d 661, 666 (D.C. Cir. 1981), overruled on other grounds by Church of Scientology of Calif. v. IRS, 792 F.2d 153 (D.C. Cir. 1986).

IV.    **Conclusion**

For these reasons, the Court will grant in part and deny in part Plaintiff's Motion for Summary Judgment, and it will also grant in part and deny in part Defendant's Motion for Summary Judgment. DOJ must turn over the redacted portions of the White House-DOJ documents, but need not disclose any portion of the Agency-DOJ documents. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 13, 2018